IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CORONADO GROUP, LLC,**
**Employer Below, Petitioner**

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 22-ICA-312     (JCN: 2021023430)**

**MARSHAL L. LYTTON, JR.,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Coronado Group, LLC, ("Coronado") appeals the decision of the Workers' Compensation Board of Review ("Board") dated November 18, 2022, affirming the Office of Judge's ("OOJ") decision that ruled the claim compensable for carpal tunnel syndrome ("CTS"). Respondent Marshal L. Lytton, Jr. timely filed a response.[1] Coronado timely filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lytton completed an Employees' and Physicians' Report of Occupational Injury or Disease for CTS that he contended resulted from his work as an underground coal miner. The date of last exposure was listed as March 5, 2020. On May 5, 2021, Michael Kominsky, D.C., completed the physician's section of the form, listing the diagnosis codes for CTS and cubital tunnel syndrome, and indicating that these were occupational diseases resulting from chronic repetitive motion. Mr. Lytton completed the claim administrator's Carpal Tunnel Questionnaire, listing his job duties as mining coal, running equipment, lifting and putting in belt splices, handling cables, and bolting top. Further, Mr. Lytton indicated his job involved operating equipment and tools such as a roof bolter, continuous miner, hammers, and shuttle cars. Mr. Lytton indicated that he frequently performed work requiring rotations and bending of the wrists, and lifting. The treatment provider's signature is illegible on the Physician Questionnaire, dated June 2, 2021, however, the provider listed the same address as that of Chiropractor Kominsky. The provider noted that an EMG performed on April 6, 2021, revealed bilateral median nerve neuropathy consistent with bilateral CTS. Further, Mr. Lytton was diagnosed with repetitive strain

---

[1] Coronado is represented by Steven K. Wellman, Esq. and James W. Heslep, Esq. Mr. Lytton is represented by Reginald D. Henry, Esq. and Lori J. Withrow, Esq.

1

injury as a consequence of his long history of coal mining work using vibrating and impact tools, hammering, setting timbers, and using levers to operate machinery. A prior medical history was positive for diabetes. Mr. Lytton was referred for an orthopedic examination.

On June 21, 2021, Rebecca Thaxton, M.D., performed a record review and opined that Mr. Lytton's work history did not support work-related CTS. Dr. Thaxton determined that since November 1, 2018, when Coronado hired Mr. Lytton as a foreman, he had performed little physical activity. Based on information from "the employer," Dr. Thaxton reported that Mr. Lytton's work for Coronado was supervisory. She did not feel that his use of handheld tools and vibrating tools was consistent with occupationally related CTS. She also noted that he had not worked since March of 2020. Further, Dr. Thaxton noted a medical history of diabetes and obesity and commented that the EMG diagnosis of CTS was made over a year after Mr. Lytton last worked. These factors led Dr. Thaxton to determine that the medical evidence did not support a diagnosis of work-related CTS.

By order dated June 21, 2021, the claim administrator denied the claim based on Dr. Thaxton's review. Mr. Lytton protested.

Treatment records reveal Mr. Lytton's medical history included diagnoses of hypertension and sleep apnea, and in early 2010 diabetes mellitus was diagnosed. In April of 2015, a diagnosis of peripheral neuropathy secondary to uncontrolled Type II diabetes was made. Hypothyroidism was mentioned in a few reports from 2019, but it did not remain as a diagnosis and it was unclear whether any testing confirmed it or ruled it out.

In a deposition on August 11, 2021, Mr. Lytton testified that Chiropractor Kominsky diagnosed him with CTS. Mr. Lytton confirmed that he last worked as a shift foreman for Coronado, and that his job duties included making belt splices, using hammers and over 100 nails per splice. In detailed testimony, Mr. Lytton described how he hammered nails into the splices, estimating that over one hundred nails were used in each splice. Further, Mr. Lytton asserted that as part of his job he would move belts and perform other work requiring using tools such as channel locks, crescent wrenches, sledgehammers, four-pound hammers, jack bars, and slate bars. According to Mr. Lytton, he had to use force and gripping to use these tools, and he noted that he was subjected to vibrations from the impact wrenches he used in his work. Mr. Lytton also testified that he used a computer for one-half to three-fourths of an hour out of a twelve-hour shift. In the deposition, Mr. Lytton also described the work he performed for a previous employer from 2012 to 2018 where he was a superintendent of miner sections. While this position required a significant amount of supervisory work, Mr. Lytton contended that even during those years he used tools that required forceful, repetitive hand motions every day. Mr. Lytton reviewed his other work history which was also in the mining industry and involved operating a continuous miner using levers, and using a sledgehammer, bit wrench, and slate bar, all of which required repetitive motions. According to Mr. Lytton, his hand symptoms began during his employment with Coronado and worsened when he used tools. However, he

admitted he was still having constant symptoms even though he no longer was working. Mr. Lytton discussed his medical conditions and said he controlled his diabetes and high blood pressure with medications.

On November 30, 2021, Marsha Bailey, M.D., evaluated Mr. Lytton and diagnosed CTS. However, Dr. Bailey opined the condition was unrelated to Mr. Lytton's occupation. Her opinion focused on several factors. First, Dr. Bailey found that Mr. Lytton had reported numbness in his fingers and wrists years before he worked for Coronado. Second, she felt that Mr. Lytton's work as a foreman at Coronado did not involve sufficient repetitive or forceful exertion to be a causative factor for CTS. Dr. Bailey indicated that she relied on information about Mr. Lytton's job duties that Coronado provided to her. However, Dr. Bailey noted that Mr. Lytton's occupational duties at Coronado included making belt splices, shoveling belt lines, running a shuttle car, operating a continuous miner, and shift foreman. Third, Dr. Bailey determined that Mr. Lytton's risk factors included obesity, diabetes, and hypothyroidism. In her analysis, Dr. Bailey opined that the CTS and cubital tunnel syndrome did not result from Mr. Lytton's employment, but were instead due to non-occupational conditions.

In a decision dated March 31, 2022, the OOJ applied the criteria set forth in West Virginia Code § 23-4-1(f) (2021) in determining whether the claim for CTS, an occupational disease, was compensable.[2] Although the OOJ noted that Mr. Lytton had only worked for a year and one half for Coronado, it also observed that he had worked for a total of forty-one years as an underground coal miner, and it mentioned that occupational disease claims were no longer allocated between employers. Ultimately, the OOJ affirmed the order denying the claim on the basis that Mr. Lytton failed to submit sufficient documentation regarding his work activities during his forty-one years as a coal miner. The OOJ noted that while "[o]ne can imagine a coal miner performing repetitive and forceful

---

[2] The six criteria set out in the statute are as follows:

(1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee, and (6) that it must appear to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

work with his or her hands," such "work activities are not assumed," and Mr. Lytton failed to present any testimony in the protest.

As it turned out, the OOJ's decision dated March 31, 2022, was based on an incomplete record. The OOJ granted Mr. Lytton's motion to reconsider on the basis that his deposition transcript was timely submitted into evidence but had not been considered.

On June 24, 2022, the OOJ issued a decision that considered Mr. Lytton's deposition testimony and again noted that West Virginia Code § 23-4-1(f) was applicable in determining whether a claim for CTS was compensable. The OOJ ruled that the claimant had proven by a preponderance of the evidence that Mr. Lytton developed bilateral CTS in the course of and resulting from his employment. Referencing Mr. Lytton's testimony, the OOJ determined that he "spent the majority of his shifts performing manual labor" involving moving and splicing belts, and hanging mining curtains, using tools requiring force and repetitive motions. Further, the OOJ noted that Mr. Lytton's prior employment in the mining industry exposed him to the type of work that could cause CTS. The OOJ acknowledged the existence of Mr. Lytton's personal risk factors, but found it was more likely than not that Mr. Lytton's CTS developed in the course of and as a result of his employment. The Board affirmed by order dated November 18, 2022. Coronado now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, __ W. Va. __, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Coronado argues that the OOJ failed to apply the burden of proof regarding Mr. Lytton's non-occupational risk factors. Coronado cites the West Virginia Code of State Rules § 85-20-41.2 (2006), and argues that half of CTS cases are idiopathic. Here, it contends, there was no medical evidence examining Mr. Lytton's duties and finding them to be the cause of his CTS. Rather, Coronado asserts that the medical evidence indicates that the more likely cause of Mr. Lytton's CTS was his personal risk factors and the OOJ failed to properly weigh the evidence.

Coronado also argues that the OOJ ruled the claim compensable based on Mr. Lytton's testimony alone. As evidence of this argument, Coronado notes that when the OOJ ruled on March 31, 2022, it affirmed the rejection of the claim based on a record that did not contain the deposition testimony; then, upon reconsideration, when Mr. Lytton's testimony was considered, the OOJ held the claim compensable. Coronado argues that the OOJ erred in relying on Mr. Lytton's testimony, in the absence of credible medical evidence showing his CTS was related to his employment.

Finally, Coronado argues that Mr. Lytton was not exposed to the hazards of CTS while working as a foreman for Coronado from November of 2018 to March 5, 2020. Coronado asserts Dr. Bailey set forth a review of Mr. Lytton's work duties and determined that his CTS was not work-related.

Mr. Lytton counters that the OOJ correctly found the claim compensable after it considered his deposition testimony regarding his work duties. The findings of Drs. Bailey and Thaxton, Mr. Lytton asserts, assumed he was a foreman with solely supervisory duties, when his testimony revealed that he frequently used tools requiring force and repetitive motion. Also, Mr. Lytton notes that Chiropractor Kominsky's report supported a finding that his CTS was directly related to his occupation. Finally, Mr. Lytton argues that West Virginia Code § 23-4-1 does not require him to prove that the conditions of his employment were the exclusive or sole cause of the CTS, nor was he required to show that CTS is particular to one industry, work environment, or occupation. Instead, he argues that the evidence shows that the CTS developed as a result of his work and worsened over the course of his employment.

Upon review, we find no reversible error in the Board's decision to affirm the OOJ's decision. Pursuant to our statutory standard of review, this Court may only reverse the Board in a limited set of circumstances.[3] Coronado seeks a reversal on the basis that the

---

[3] Our review is deferential to the Board. West Virginia Code § 23-5-12a(b) sets forth the same standard of review as was previously required of the Board when it reviewed decisions by the OOJ per West Virginia Code § 23-5-12 before the 2021 statutory amendments became effective. In considering West Virginia Code § 23-5-12, the Supreme Court of Appeals of West Virginia stated that the Board was required to accord deference

OOJ and Board were clearly wrong in view of the evidence. However, the OOJ as the factfinder, adequately analyzed and weighed Mr. Lytton's personal risk factors and work-related risk factors for developing CTS, and appropriately considered Mr. Lytton's testimony about his job duties. We are not persuaded that Mr. Lytton's testimony was insufficient evidence that his work exposed him to the risks of CTS.[4] Further, it is clear that the OOJ also properly weighed and considered opinions by Drs. Thaxton and Bailey when it determined that it was more likely than not that Mr. Lytton's CTS developed in the course of and resulting from his employment.

We note that there is no minimum amount of physical work duties that a claimant must have performed in order to maintain a claim for CTS, pursuant to West Virginia Code § 23-4-1(f),

> compensation is not payable for an occupational disease . . . unless the employee has been exposed to the hazards of the disease in the State of West Virginia over a continuous period that is deemed to be sufficient, by rule of the board of managers, for the disease to have occurred in the course of and resulting from the employee's employment.

There is no specific "board of manager's rule," but West Virginia Code of State Rules § 85-20-41.5 and 41.6 provide that the type of work associated with CTS causation involves high force and high repetitive manual movement and CTS is associated with years of repetitive activity.

The OOJ weighed the evidence in the record and found that Mr. Lytton was exposed to the hazards of CTS while working for Coronado and in his prior work as an underground miner over the course of forty-one years. As the OOJ noted in the decision dated March 31, 2022, occupational disease claims are no longer allocated between employers.[5] Thus,

---

to the decisions by the OOJ. *Conley v. Workers' Comp. Div.*, 199 W. Va. 196, 203, 483 S.E.2d 542, 549 (1997).

[4] Although Coronado relies heavily on *Addair v. Litwar Processing Co., LLC,* No. 11-0397, 2012 WL 2914980 (W. Va. Feb. 9, 2012) (memorandum decision), we decline to extend *Addair* to this claim for CTS. *Addair* concerned complex illnesses related to alleged chemical exposure in a deliberate intent action.

[5] West Virginia Code § 23-4-1(f), gives the Insurance Commissioner the discretion to allocate the responsibility and liability between multiple employers. The Insurance Commissioner issued a notice that beginning in 2006 it was exercising its discretion to not allocate or divide charges for claims among employers from which a claimant received exposure to the hazard of an occupational disease. The Commissioner's notice specifies that it applies to the "practice of claims allocation of workers' compensation claim[s] for occupational pneumoconiosis (OP) … and other occupational diseases (OD), including

that Mr. Lytton had symptoms before he worked for Coronado is not determinative in a claim for the occupational disease of CTS.

Coronado has not made a showing that the Board's affirmance is clearly wrong. Accordingly, we affirm the Board's order dated November 18, 2022.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating

---

carpal tunnel syndrome." In *Pioneer Pipe, Inc., v. Swain*, 237 W. Va. 722, 791 S.E.2d 168 (2016), the Supreme Court of Appeals of West Virginia approved the Commissioner's decision to not allocate claims.